Slip Op. 26-24

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| YC RUBBER CO. (NORTH AMERICA) LLC AND SUTONG TIRE RESOURCES, INC., <br><br> Plaintiffs, <br><br> and <br><br> MAYRUN TYRE (HONG KONG) LIMITED AND ITG VOMA CORPORATION, <br><br> Consolidated Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Mark A. Barnett, Chief Judge <br> Consol. Court No. 19-00069 |

## OPINION

[Sustaining the U.S. Department of Commerce's Third Remand Results regarding the second administrative review of the antidumping duty order on certain passenger vehicle and light truck tires from the People's Republic of China.]

Dated: March 04, 2026

Ned H. Marshak and Jordan C. Kahn, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, NY, for Plaintiffs YC Rubber Co. (North America) LLC and Sutong Tire Resources, Inc.

Jonathan T. Stoel, Craig A. Lewis, and Nicholas R. Sparks, Hogan Lovells US LLP, of Washington, DC, for Consolidated Plaintiff ITG Voma Corporation.

Claudia Burke, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. Also on the brief were Brett A. Shumate, Assistant Attorney General, and Patricia M. McCarthy, Director. Of counsel on the brief was Karl Mueller, Attorney, Office of Chief Counsel for

Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

      Barnett, Chief Judge:  This matter is before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") third redetermination upon remand.  See Confid. Final Results of Redetermination Pursuant to Ct. Remand, A-570-016 (Aug. 19, 2025) ("Third Remand Results"), ECF No. 144-1; see also Certain Passenger Vehicle and Light Truck Tires From the People's Republic of China, 84 Fed. Reg. 17,781 (Dep't Commerce Apr. 26, 2019) (final results of antidumping duty admin. rev. and final determination of no shipments; 2016–2017) ("Final Results"), ECF No. 24-4, and accompanying Issues and Decision Mem., A-570-016 (Apr. 19, 2019) ("I&D Mem."), ECF No. 24-5; Final Results of Redetermination Pursuant to Ct. Remand, A-570-016 (Oct. 31, 2023) ("First Remand Results"), ECF No. 78-1; Confid. Final Results of Redetermination Pursuant to Ct. Remand, A-570-016 (Oct. 28, 2024) ("Second Remand Results"), ECF No. 112-1.[1]  For the reasons discussed herein, the court will sustain Commerce's Third Remand Results.

---

[1] The administrative record for the Third Remand Results is contained in a Public Remand Record, ECF No. 147-2, and a Confidential Remand Record, ECF No. 147-3.  The administrative record for the Final Results is contained in a Public Administrative Record, ECF No. 24-2, and a Confidential Administrative Record, ECF No. 24-3.  For the Third Remand Results, the parties submitted joint appendices containing record documents cited in their comments.  Third Remand Joint Appendix, ECF Nos. 157 (confid.), 158 (public).

# BACKGROUND

The court repeats the history of the proceeding as relevant and presumes familiarity with past decisions. *See YC Rubber Co. (N. Am.) LLC v. United States (YC Rubber I)*, 44 CIT __, 487 F. Supp. 3d 1367 (2020); *YC Rubber Co. (N. Am.) LLC v. United States (YC Rubber II)*, Appeal No. 21-1489, 2022 WL 3711377 (Fed. Cir. Aug. 29, 2022); *YC Rubber Co. (N. Am.) LLC v. United States (YC Rubber III)*, 48 CIT __, 711 F. Supp. 3d 1387 (2024); *YC Rubber Co. (N. Am.) LLC v. United States (YC Rubber IV)*, 49 CIT __, 788 F. Supp. 3d 1296 (2025).

## I.    Order of Mandatory Respondent Selection

Commerce initiated the second administrative review of the antidumping order on passenger tires from China in October 2017. *Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 82 Fed. Reg. 48,051, 48,055 (Dep't Commerce Oct. 16, 2017); *see also Initiation of Antidumping and Countervailing Duty Admin. Revs.*, 82 Fed. Reg. 57,705, 57,707 (Dep't Commerce Dec. 7, 2017) (correcting misspellings) (collectively "*Initiation Notice*"). Commerce issued the *Final Results* in the underlying administrative review in April 2019, indicating that it had selected two mandatory respondents. *See* I&D Mem. at 14–15. After one of the respondents withdrew from the administrative review, Commerce continued with only one mandatory respondent. *Final Results*, 84 Fed. Reg. at 17,781; *see* I&D Mem. at 14–15. YC Rubber Co. (N. Am.) LLC and Sutong Tire Resources, Inc. (together, "YC Rubber"), Mayrun Tyre (Hong Kong) Limited ("Mayrun"), and ITG Voma Corp. ("ITG Voma") (collectively, "Plaintiffs") challenged the *Final Results* in this consolidated case.

While this court initially sustained Commerce's completion of the administrative review with a single participating respondent, YC Rubber I, 487 F. Supp. 3d at 1375–79, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") vacated that decision, concluding that Commerce "erred in relying on a single entity for calculation of a dumping margin for all respondents." YC Rubber II, 2022 WL 3711377, at *4–5.  The issue of mandatory respondent selection was thus remanded to the agency.  Id. at 5; Order (Feb. 2, 2023) at 1, ECF No. 72.

### A.  First Remand Results

On remand, Commerce sought the participation of an additional mandatory respondent and considered, in the following order, ostensibly corresponding to each company's volume of imports for the relevant time period: Shandong Wanda Boto Tyre Co., Ltd ("Wanda Boto"), Shandong Hengyu Science & Technology Co., Ltd. ("Hengyu"), Mayrun, Winrun Tyre Co., Ltd. ("Winrun"), and Kenda Rubber (China) Co., Ltd. ("Kenda").  See First Remand Results at 2–5.  Commerce issued mandatory respondent questionnaires to each of the first four companies, in turn, but each of the companies declined to participate.  Id. at 3–4.  Upon receiving a questionnaire, Kenda participated and provided timely responses.  Id. at 4–5.  Despite stating that Shandong Linglong Tyre Co., Ltd. ("Linglong") was "eligible to be selected as a second mandatory respondent," id. at 2, Commerce did not include Linglong in the respondent selection process, id. at 34.

The court again remanded Commerce's respondent selection process for reconsideration or further explanation with respect to two distinct issues.  See YC

*Rubber III*, 711 F. Supp. 3d at 1402.  First, the court questioned Commerce's methodology for calculating companies' import volume when selecting a second respondent, noting that the CBP data on the record appeared to suggest that "Commerce failed to aggregate certain data entries with slightly different [company] names" when calculating Kenda's volume over the relevant period.  *Id.* at 1401.  Second, the court questioned Commerce's omission of Linglong from the mandatory respondent selection process and the lack of any "basis in the record for this discrepancy."  *Id.* at 1400–02 (citation omitted).

### B.  Second Remand Results

Commerce explained in its Second Remand Results that it selected eligible companies as mandatory respondents in order of their respective volume of imports and did not aggregate CBP data with certain variations in company name when calculating Kenda's import volume.  *See* Second Remand Results at 4–5.  While Commerce later learned that certain name variations were properly associated with Kenda based on Kenda's questionnaire responses, *see YC Rubber IV*, 788 F. Supp. 3d at 1304 (citation omitted), Commerce did not have the benefit of that information at the time of respondent selection, *see id.* at 5.  Thus, Commerce concluded that the order of selection with respect to Kenda was proper based on the agency's analysis of the data available at that time.  *Id.*

Commerce further acknowledged its omission of Linglong from the respondent selection process, concluding that Linglong should have been selected as a mandatory respondent before Kenda based on the agency's analysis of the CBP data available at

Consol. Court No. 19-00069                                                                                           Page 6

the time of respondent selection, i.e., before Commerce aggregated the import data associated with Kenda. *Id*. at 4–6. Commerce thus selected Linglong as an additional respondent and issued a questionnaire to the company, but Linglong declined to participate. *Id.* at 6.

The court again sustained the Second Remand Results in part and remanded in part. *YC Rubber IV*, 788 F. Supp. 3d at 1309. The court found that Commerce "reasonably explained its decision . . . to decline to combine CBP data entries when determining Kenda's volume of imports" at the time of initial mandatory respondent selection. *Id.* at 1303. While acknowledging the "unusual" nature of the staggered timing with respect to the second respondent selection process, the court found that Commerce's decision to rely on the disaggregated CBP data for Kenda when considering whether to select Linglong was unsupported by substantial evidence. *Id.* at 1305 ("Commerce had additional information about the volume of Kenda's entries and may not simply ignore it.").

### C. Third Remand Results

In the Third Remand Results, Commerce utilized Kenda's aggregated CBP import data and determined that Linglong should not have been selected as a mandatory respondent prior to Kenda. Third Remand Results at 4.

## II.     Separate Rate Eligibility

In the *Final Results*, Commerce identified Kenda, Hengyu, Linglong, Wanda Boto, Mayrun, and Winrun as among the companies eligible for a rate separate from the China-wide antidumping duty rate. 84 Fed. Reg. at 17,782–83.

### A. First Remand Results

After Wanda Boto, Hengyu, Mayrun, and Winrun declined to participate as respondents during the remand proceeding, Commerce determined that each company was no longer eligible for a separate rate and assigned them the China-wide rate. First Remand Results at 5–6, 36. Reviewing the First Remand Results, the court held that Commerce had not provided an adequate explanation for why the companies' failure to participate as respondents justified the denial of their separate-rate status and ordered a second remand. *YC Rubber III*, 711 F. Supp. 3d at 1404–05, 1407.

### B. Second Remand Results

In the Second Remand Results, Commerce continued to deny separate-rate status to Wanda Boto, Hengyu, Mayrun, and Winrun, and determined to deny separate-rate status to Linglong, because of each company's refusal to participate as respondents (for Linglong, the refusal first occurred during the second remand proceeding). Second Remand Results at 6–13. The court sustained Commerce's further explanation for its denial of separate-rate status with respect to Wanda Boto, Hengyu, Mayrun, and Winrun, explaining that "[b]y failing to respond to questionnaires as mandatory respondents when reasonably requested to do so, [these companies] did not rebut the presumption of government control" that Commerce applies to companies from non-market economy ("NME") countries such as the People's Republic of China. *YC Rubber IV*, 788 F. Supp. 3d at 1307. With respect to Linglong, however, the court noted that "[b]ased on the record before Commerce during the Second Remand proceeding, it is undisputed that Kenda had more imports than Linglong and, thus,

should have been selected before Linglong." *Id.* As a result, the court explained, "Commerce would not have had reason to select Linglong as a mandatory respondent and [Linglong's] separate-rate status would have been undisturbed." *Id.* Commerce's decision to deny a separate rate to Linglong was thus remanded to the agency. *Id.* at 1309.

### C. Third Remand Results

In the Third Remand Results, Commerce determined that Linglong should not have been selected as a mandatory respondent prior to Kenda and that, as a result, "Linglong should not have been issued a questionnaire and . . . its failure to respond to that questionnaire is moot." Third Remand Results at 4–5. Accordingly, Commerce granted separate-rate status to Linglong, explaining that "the evidence placed on the record of the underlying administrative review by Linglong demonstrates an absence of *de jure* and *de facto* government control." *Id.* at 8–9.

### III. Comments on Third Remand Results

YC Rubber and ITG Voma filed comments opposing the Third Remand Results. Cmts. of [ITG Voma and YC Rubber] Opposing Third Remand Determination ("Pls.' Cmts."), ECF No. 151.[2] Defendant United States filed comments in support of the Third Remand Results. Def.'s Cmts. in Supp. of Remand Redetermination ("Def.'s Cmts."),

---

[2] While Mayrun was not a party to the comments opposing the Third Remand Results, the court nonetheless refers to these comments as "Plaintiffs' Comments," and to YC Rubber and ITG Voma collectively as "Plaintiffs" hereafter.

Consol. Court No. 19-00069                                                                                    Page 9

ECF No. 156.  For the following reasons, the court sustains Commerce's Third Remand Results.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018),[3] and 28 U.S.C. § 1581(c).  The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

The issues remanded to Commerce after the agency's Second Remand Results were Linglong's selection as a mandatory respondent and, relatedly, that company's eligibility for separate-rate status.  *See YC Rubber IV*, 788 F. Supp. 3d at 1309.  The crux of Plaintiffs' challenge to Commerce's Third Remand Results, however, is *not* with respect to Commerce's determinations on the remanded issues but, rather, their claim that Commerce must apply comparable *results* to them.  *See* Pls.' Cmts.  The court addresses these arguments, finding that any disparate results applied to Plaintiffs were attributable to differences in their circumstances from those of Linglong.

    I.    **Separate-Rate Eligibility for Respondents from NME Countries**

    **A. Parties' Contentions**

Plaintiffs contend that Commerce was required to re-examine the separate-rate status of Wanda Boto, Hengyu, and Winrun when it reconsidered Linglong's separate-

---

[3] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition unless otherwise stated.

rate eligibility in the Third Remand Results and that the agency should have reinstated separate-rate status to these companies. Pls.' Cmts. at 3–5. Plaintiffs argue that Commerce's approach, which allowed Linglong to maintain a separate rate while denying the other companies separate-rate status, was arbitrary and unreasonable. *Id.* at 5–8. Plaintiffs aver that it was infeasible for Wanda Boto, Hengyu, and Winrun to participate as mandatory respondents due to the passage of time between the underlying review period and Commerce's selection of a second mandatory respondent more than six years later. *Id.* at 7–8.

　　　　Defendant responds that the separate-rate status of Hengyu, Winrun, and Wanda Boto was already sustained by this court and that reconsidering those decisions during the Third Remand would have been inconsistent with the court's remand order. Def.'s Cmts. at 6–7 (citing *YC Rubber IV*, 788 F. Supp. 3d at 1307, 1309). Linglong is distinct, Defendant avers, because "Linglong was not properly selected as a mandatory respondent by Commerce, while the other companies were." Def.'s Cmts. at 7 (citing, *inter alia*, Third Remand Results at 11; *YC Rubber IV*, 788 F. Supp. 3d at 1307).

### B. Analysis

　　　　While the court will affirm these Third Remand Results, this affirmance reflects the view only that the agency has come to a reasonable determination (perhaps the most reasonable determination) available to it under the confluence of unusual circumstances present in this case. Nevertheless, the court recognizes that these Third Remand Results might reasonably be questioned on several fronts. As argued by Plaintiffs, there are certain ways in which Wanda Boto, Hengyu, and Winrun are very

Consol. Court No. 19-00069 Page 11

much like Linglong—all four companies timely provided separate-rate application or certification documentation, all four *ultimately* had a lower volume of subject imports than Kenda, and all four companies declined to provide responses to Commerce's questionnaire when presented with it during the first or second remand proceeding. Nevertheless, through no fault of its own, Linglong was omitted from Commerce's respondent selection process during the first remand proceeding, i.e., prior to Commerce having the information necessary to fully aggregate all of Kenda's imports. Ultimately, that factual distinction underlies the following discussion and supports Commerce's finding that Wanda Boto, Hengyu, and Winrun were reasonably selected for individual examination during the first remand proceeding and may be held to account for the consequences of their decisions not to participate in the review. The distinction also underlies why, when Commerce directly considered whether Linglong should have been selected, the court required Commerce to conduct that consideration based on the most accurate information available at that time, i.e., the aggregated Kenda data. Based on the updated data, the court finds that Commerce may continue to determine that Linglong's imports are subject to a separate rate-based dumping margin.

  As the court has previously discussed, Commerce applies a rebuttable presumption of government control to producers and exporters in NME countries for purposes of its antidumping duty analysis. *See, e.g., Diamond Sawblades Mfrs. Coal. v. United States*, 866 F. 3d 1304, 1311 (Fed. Cir. 2017) (stating that the Federal Circuit has "consistently . . . sustained Commerce's application of a rebuttable presumption of

Consol. Court No. 19-00069 Page 12

government control to exporters and producers in NME countries, such as the [People's Republic of China]") (citations omitted); *Transcom, Inc. v. United States*, 294 F. 3d 1371, 1373 (Fed. Cir. 2002) ("Under the NME presumption, a company that fails to demonstrate independence from the NME entity is subject to the countrywide rate, while a company that demonstrates its independence is entitled to an individual rate as in a market economy."); *see also Initiation Notice*, 82 Fed. Reg. at 57,706 (restating and applying the NME presumption within the instant administrative review). At the beginning of the underlying administrative review, Commerce explained that it will grant a separate rate only to those companies who are able to rebut this "NME presumption" by "demonstrat[ing] the absence of both *de jure* and *de facto* government control over export activities." *Id.* at 57,706. To demonstrate the absence of government control, companies may submit a separate-rate application or, if such companies have received a separate rate in a prior segment of the same proceeding, a separate-rate certification. *Id.* at 57,706–07. Notably, however, Commerce further explained that information requested in the questionnaire issued to respondents selected for individual examination, such as organizational charts on affiliation and corporate structure, manufacturing facilities, locations, and legal structure, could all be examined by the agency to "corroborate claims made by [Plaintiffs] in their respective [separate-rate certifications] with respect to the absence of *de facto* government control." Second Remand Results at 9. By not responding to the questionnaire, Plaintiffs failed to rebut the NME presumption.

Consol. Court No. 19-00069                                                                                          Page 13

Upon review, the court sustained Commerce's denial of separate-rate status to Wanda Boto, Hengyu, and Winrun. *YC Rubber* IV, 788 F. Supp. 3d at 1306–07. However, the court remanded Commerce's denial of separate-rate status to Linglong for reconsideration or further explanation in conjunction with Commerce's need to re-examine the order in which Linglong was selected as a respondent compared to Kenda. *Id.* at 1307. Plaintiffs do not contest Commerce's decision to grant separate-rate status to Linglong, nor do they raise any new arguments at this stage of the proceeding as to why the denial of separate-rate status to Wanda Boto, Hengyu, and Winrun was improper. Instead, Plaintiffs seek to re-litigate an issue that has already been addressed by this court. While the court does have discretion to reconsider a prior, non-final decision pursuant to USCIT Rule 54(b), the court is by no means obligated to do so.[4] *See* USCIT Rule 54(b); *see also ABB Inc. v. United States*, 43 CIT __, __, 375 F. Supp. 3d 1348, 1352 (2019) ("The court has the discretion to reconsider a prior decision under USCIT Rule 54(b) as justice requires, meaning when the court determines that reconsideration is necessary under the relevant circumstances.") (internal quotation marks and citation omitted).

With respect to Commerce's separate-rate status determinations, Linglong and Plaintiffs are not similarly situated and thus concerns about their disparate treatment are overstated. Commerce reasonably selected Plaintiffs for individual examination based

---

[4] Moreover, this court's rules of procedure do not govern the conduct of Commerce's remand proceeding, thus obviating Plaintiffs' suggestion that USCIT Rule 54(b) justified Commerce's reexamination of the separate-rate status of Wanda Boto, Hengyu, and Winrun in its Third Remand Results. *See* Pls.' Cmts. at 4–5.

Consol. Court No. 19-00069                                                                                          Page 14

on information regarding their volume of imports available at the time of that selection. As previously decided, Commerce had the authority to reconsider separate-rate status as relevant to its respondent selection analysis, *YC Rubber III*, 711 F. Supp. 3d at 1403, including by affirmatively corroborating or verifying claims made in separate-rate applications or certifications.  Commerce reasonably explained that information provided in response to the respondent questionnaire is relevant to obtaining separate-rate status because that information should corroborate a separate-rate applicant's claims, specifically with respect to the absence of *de facto* government control.  Second Remand Results at 9–11, 13.  Commerce further explained that companies that requested a separate rate and were later selected for individual examination would not be eligible for a separate rate if they did not respond to all parts of the respondent questionnaire.  *Initiation Notice*, 82 Fed. Reg. at 57,707.  Thus, "[b]y failing to respond to questionnaires as mandatory respondents when reasonably requested to do so, Hengyu, Winrun, . . . and Wanda Boto did not rebut the presumption of government control and Commerce's decision to deny a separate rate for those companies is supported by substantial evidence." *YC Rubber IV*, 788 F. Supp. 3d at 1307.[5]

In contrast, Commerce omitted Linglong from the respondent selection analysis during the first remand proceeding through no fault of Linglong.  The court remanded this aspect of the First Remand Results to the agency for reconsideration or further

---

[5] The court expressly examined and affirmed Commerce's further explanation for selecting Wanda Boto, Hengyu, and Winrun prior to Kenda, based on Commerce's explanation for relying on Kenda's then-disaggregated import volume.  *YC Rubber IV*, 788 F. Supp. 3d at 1303–04.

Consol. Court No. 19-00069                                                                                           Page 15

explanation.  In the second remand proceeding, Commerce failed to explain its decision to disregard the new information it had with respect to Kenda's import volume; however, upon reconsideration in the third remand proceeding, Commerce found that Linglong's import volume was below Kenda's aggregated import volume for the same period, and "[n]othing in the record suggest[ed] Commerce intended or needed to select a third mandatory respondent or was otherwise inclined to seek verification or corroboration of Linglong's separate-rate certification."  *Id.*  Thus, Commerce granted a separate rate to Linglong based on claims made in its certification and had no obligation to seek additional information to verify or corroborate these claims with the types of information otherwise requested in a respondent questionnaire.

      Plaintiffs aver that "Commerce should not punish [Wanda Boto, Hengyu, and Winrun] for their inability (like Linglong) to participate fully as mandatory respondents by stripping them of their previously assigned separate rates." Pls.' Cmts. at 8.  But far from being a "punishment," the application of the rebuttable presumption of government control to companies in NME countries is a reasonably foreseeable consequence of participation in an antidumping proceeding.  Plaintiffs' argument rests on the companies' purported "inability" to participate fully in the underlying administrative review due to the passage of time since Commerce's initial mandatory respondent selection, *see* Pls.' Cmts. at 7–8; however, the court has already rejected Plaintiffs' passage of time argument and rejects it again here, *see YC Rubber IV*, 788 F. Supp. 3d at 1308 ("It is unremarkable that time would pass as the litigation continued or that a litigated issue would be resolved in a way that necessitated further administrative action by

Commerce. The companies . . . were aware that Commerce's results in the second administrative review were not yet final and conclusive.").[6]  Commerce's application of the NME presumption, requests for additional information from Plaintiffs pursuant to their selection for individual examination, and subsequent determinations with respect to Plaintiffs' separate-rate status were supported by substantial evidence and were in accordance with law.

## CONCLUSION

In accordance with the foregoing, Commerce's Third Remand Results will be sustained.  Judgment will be entered accordingly.

/s/     Mark A. Barnett    
Mark A. Barnett, Chief Judge

Dated: March 04, 2026    
　　　　New York, New York

---

[6] Plaintiffs previously raised an analogous passage of time argument with respect to their request to withdraw from the administrative review, which the court also rejected. See YC Rubber IV, 788 F. Supp. 3d at 1307–09.  While the issue of separate-rate status here is a distinct one, the court continues to find the passage of time argument to be unpersuasive.